Mary FULTON d/b/a We the People Forms and Service Center of Westminster, Trude Bershof d/b/a We the People Forms and Service Center of Southeast Denver, and We the People Forms and Service Centers USA, Inc., Appellants,

v.

Charles F. McVAY, United States Trustee,[1] Appellee.

Charles F. McVay, United States Trustee, Movant,

v.

We the People of Denver, S.E., We the People of Westminster, and We the People, U.S.A., Respondents.

Nos. 04–MK–29(CBS), 04–MK–30(CBS).

United States District Court, D. Colorado.

Sept. 23, 2004.

---

1. United States Trustee Charles F. McVay is substituted for Habbo Fokkena as his successor. *See, e.g.,* Fed. R. Bank. P. 7025; Fed. R.Civ.P. 25(d).

Paul G. Quinn, U.S. Trustee's Office, Denver, CO, for appellee.

## ORDER

KRIEGER, District Judge.

Appellants Mary Fulton, Trude Bershof, and We the People Forms and Service Centers USA, Inc. (collectively, "the Appellants") appeal from an injunction issued by the Bankruptcy Court pursuant to 11 U.S.C. § 110(j).[2] For the reasons stated herein, the Court reverses and vacates the injunction order and dismisses this appeal.[3]

### I. The § 110 Order and Judgment

This appeal arises from an Order and Judgment issued pursuant to § 110 on December 31, 2003 in two bankruptcy cases: Case No. 02–22875–SBB, *In re Deirdre and Stephen Kimball,* and Case No. 02–27221–SBB, *In re Wanda May and Danny Lewis March.* The Order and Judgment consist of two components, both premised upon alleged unfair and deceptive practices by the Appellants as bankruptcy petition preparers. The first component is an order issued pursuant to § 110(i) certifying the matter to this Court for *de novo* review of factual findings ("the Recommendation").[4] This component states:

1. That this matter, pursuant to 11 U.S.C. § 110(i), be CERTIFIED to the United States District Court for the District of Colorado. This Court recommends to the U.S. District Court that the bankruptcy petition preparer WTP be assessed a fine for engaging in unfair and deceptive practices as set forth

above by providing documents, in combination the petition preparer services, and by touting and offering the services of a "supervising attorney" to their customers.

The second component is an injunction ("the Injunction") issued pursuant to § 110(j), which provides:

2. That WTP shall be enjoined, pursuant to § 105(a) and 10(j), from providing or representing that they are providing the services of a "supervising attorney" to their customers. WTP shall also be enjoined from providing the Bankruptcy Overview to their customers in connection with the petition preparation services.

The Injunction constitutes a final order which this Court considers in exercise of its appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). The Court reviews conclusions of law *de novo* but reviews factual findings for clear error. *In re Miniscribe Corp.,* 309 F.3d 1234, 1240 (10th Cir.2002).

The Appellants raise several issues on appeal. They argue that: (1) the Bankruptcy Court lacked subject matter jurisdiction to issue an injunction under § 110(j); (2) § 10 is unconstitutionally vague and overbroad and impermissibly infringes upon the Appellants' First Amendment rights; (3) the Bankruptcy Court conducted the § 110 proceedings in a manner which violated their right to due process; (4) the Bankruptcy Court committed reversible error because it consid-

---

**2.** All future statutory references are to Title II of the United States Code unless otherwise indicated.

**3.** Given the briefing in this matter, the Court concludes that oral argument would not materially assist the determination of this appeal.

**4.** The Recommendation is specifically authorized by § 110(i)(1) and 28 U.S.C. § 157(c)(1).

ered matters barred under the doctrines of *res judicata* and collateral estoppel; (5) the Bankruptcy Court erred by enjoining We the People Forms and Service Centers USA, Inc.; and (6) there was no basis in fact or law to find that the Appellants violated § 110. Because the Court concludes that the Bankruptcy Court did not adhere to and the Appellants were denied the process specified by § 10(j) in entering the Injunction, there is no need to address the remaining issues in this appeal.

## II. Procedural Background

### A. Bankruptcy Court

The appellate record shows that bankruptcy petition preparers assisted the debtors (the Kimballs and the Marches) in their bankruptcy cases filed on August 16, 2002 and October 25 2002, respectively. The Kimballs' bankruptcy petition identifies the bankruptcy petition preparer as "WE THE PEOPLE, FORMS AND SERVICE CENTER" and is signed by Trude Bershof. The Marches' bankruptcy petition identifies the bankruptcy petition preparer as "WE THE PEOPLE OF WEST-

MINSTER by Mary Fulton" and is signed by Mary Fulton.

The Kimballs and the Marches filed reaffirmation agreements for secured debts in their respective bankruptcy cases. The Bankruptcy Court held hearings to address the reaffirmation agreements pursuant to 11 U.S.C. § 524(d) and Fed. R. Bank. P. 4008. Appellants were not present at either hearing. The minutes of proceeding from these hearings reflect that both the Kimballs and the Marches advised the Bankruptcy Court that they had been advised by their respective petition preparer that they were required to reaffirm secured debts if they desired to retain the collateral.[5]

Following the reaffirmation hearings, the Bankruptcy Court *sua sponte* issued an order in each bankruptcy case entitled "Order and Notice of Show Cause Hearing" (the "Orders to Show Cause"). The Orders to Show Cause were directed to the debtors' respective bankruptcy petition preparers and required them to appear at a hearing to determine whether they improperly gave legal advice to the debtors.[6]

---

**5.** This is contrary to case authority found in *Lowry Federal Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989).

**6.** In the Kimballs' case, the Order to Show Cause states in relevant part:

Through the course of the Court's review of the file and in considering the statements made by Debtors at the hearing, it appears there may have been legal advice provided to Debtors with respect to the issue before the Court. Specifically, it is represented that Debtors were told that *they had to enter into a reaffirmation agreement in order to retain certain of their property.* It appears appropriate to schedule a hearing to consider whether or not the petition preparer utilized by Debtors for preparation of documents filed in the within case, We the People, provided legal advice to Debtors regarding reaffirmation agreements, and whether or not sanctions should be imposed as a result of this conduct.

IT IS THEREFORE ORDERED as follows:
1. A hearing regarding the issues raised herein will be held on Tuesday, March 18, 2003, at 10:00 a.m.... at which time Trudi [sic] Bershof, and/or an authorized representative of We the People, Forms and Service Center, shall appear before the Court and show cause as to whether We the People provided legal advice to Debtors regarding reaffirmation agreements and, if so, whether sanctions should be imposed as a result of such conduct.
2. Trudi [sic] Bershof, and/or an authorized representative of We the People, Forms and Service Center shall appear at the scheduled hearing....

The Order to Show Cause issued in the Marches' case is substantially the same except that it was directed to Mary Fulton.

In response, Ms. Fulton and Ms. Bershof filed motions to vacate the Orders to Show Cause, asserting that the alleged conduct was not prohibited by § 110. Apparently, both motions were denied,[7] but the only order in the record on appeal is that which denied Ms. Fulton's motion.

The Orders to Show Cause were consolidated for hearing. The first hearing occurred in March 2003. The United States Trustee appeared and moved to continue it. The hearing was continued to June 5, 2003, then apparently continued to August 7, 2003.[8]

Between the March and August hearings, Ms. Fulton filed a motion requesting clarification of the order denying her motion to vacate the show cause hearing. She contested a statement in the order—that § 10 provides penalties "for persons who *negligently* prepare bankruptcy petitions"—and requested clarification concerning a reference to Fed.R.Civ.P. 1(b). In setting the motion for hearing,[9] the Bankruptcy Court found that no further explanation of the prior order was needed and further observed "that [it] does not appear counsel has performed any research with regard to 11 U.S.C. § 110 or Rule of the Federal Rules of Civil Procedure." The Bankruptcy Court then ordered counsel to file "a written statement identifying the nature, content, and full extent of research counsel has performed with regard to the inquiries raised, specifically 11 U.S.C. § 110 and Rule 1, Fed. R.Civ.P." Counsel for Ms. Fulton filed a response to that order as directed but no outcome is apparent from the appellate record.

Sometime later, the United States Trustee filed a "Motion to Expand Scope of Examination of Practices of We the People Forms and Service Center" to incorporate additional issues and parties. The United States Trustee requested consideration of: (1) whether We the People Forms and Service Center of Westminster violated § 110(g)(1) by accepting a money order payable to the Clerk of the Court; (2) whether the $199 document preparation fee and $15 reproduction fee are excessive; (3) whether the use of a supervising attorney is a fraudulent and deceptive practice where the attorney does not represent the debtors but is available to chat with them without providing specific legal advice; (4) whether We the People Forms and Service Center of Westminster exceeded the appropriate scope of their services by providing debtors with an interpretive handbook as an aid to completing a questionnaire; and (5) whether the particular individual who prepared the bankruptcy documents is a bankruptcy petition preparer. The motion also requested that the petition preparers' "franchisor," We the People Forms and Service Center USA, Inc., be "examined." The next day, without response by Appellants, the Bankruptcy Court granted the United States Trustee's motion, expanding the scope of the "examination" to include the third, fourth and fifth issues and We the People Forms and Service Center USA, Inc.

The United States Trustee then filed a motion under Fed. R. Bank. P. 7030 and 7034 requesting to designate and depose Ms. Fulton as the representative of We the People Forms and Service Center of Westminster, and to compel her to produce

---

**7.** Bankruptcy court docket sheets reflect that similar orders were entered in both bankruptcy cases.

**8.** The notices resetting the hearing were not included in the record on appeal.

**9.** The order purportedly reserved ruling on the motion but it nevertheless addressed it.

documents. Ms. Fulton objected, contending that, pursuant to Fed. R. Bank. P. 7030(b)(6), designation of a representative was to be made by We the People Forms and Service Center of Westminster rather than by court order. Without addressing Ms. Fulton's objection, the Bankruptcy Court granted the United States Trustee's motion, designating Ms. Fulton as the representative of We the People Forms and Service Center of Westminster for deposition.

The second hearing on the Orders to Show Cause was held in August 2003. The Marches, the Kimballs, We the People Forms and Service Center of Westminster, We the People Forms and Service Center of Southeast Denver, We the People Forms and Service Centers USA, Inc., and the United States Trustee appeared, either individually or through counsel. At the beginning of the hearing, counsel for Trude Bershof and We the People Forms and Service Center of Southeast Denver argued that the Bankruptcy Court could not issue an injunction under § 110(j) because no civil action had been initiated. Neither the United States Trustee nor the Bankruptcy Court subsequently addressed this contention. After receiving testimony and other evidence, the Bankruptcy Court took the matter under advisement.

In the December 31, 2003 Order, the Bankruptcy Court found that We the People Forms and Service Center of Westminster, We the People Forms and Service Center of Southeast Denver, and We the People Forms and Service Centers USA, Inc. (which he referred to collectively as "WTP") gave the Kimballs and the Marches documents, including one "entitled 'Bankruptcy Overview—Chapter 7 Colorado,'" which stated that debtors "enjoy the right, as a WE THE PEOPLE customer, to chat with our Supervising Attorney, at no additional cost to you."

The Bankruptcy Court found that such document was unfair and deceptive because it did not inform the debtors that they could not rely on the supervising attorney's advice and that the attorney would not represent them, and found the document to be misleading because it gave the incorrect impression that "when it comes to secured claims, the only two options are reaffirmation or surrender." Based on these findings, the Bankruptcy Court made the Recommendation and imposed the Injunction which gives rise to these proceedings.

**B. District Court**

For the § 10(i) Recommendation, the United States Trustee filed a motion requesting this Court to adopt the Bankruptcy Court's factual findings which initiated Case No. 04–MK–30 (CBS). From the § 110(j) Injunction, the Appellants initiated an appeal in Case No. 04–MK–29 (CBS). Because both actions arise from the same order and same factual findings, this Court consolidated the matters.

After considering the parties' arguments as to the source of this Court's subject matter jurisdiction with respect to the differing aspects of the Order and Judgment, the Court elected to first proceed with the § 110(j) appeal issues. As to the § 10(i) Recommendation, the Court has authorized the joinder of a person with appropriate standing to request monetary relief.

**III. Analysis**

▮ The Appellants have raised a host of challenges to the Injunction. Among these are the contentions that the Bankruptcy Court lacked subject matter jurisdiction and that the Appellants were denied due process. The Court interprets these as an argument that the Bankruptcy Court failed to follow the procedure required by § 110(j). With that contention, the Court agrees.

## A. What procedure is required for issuance of an injunction pursuant to § 110(j)?

The issue of what procedure is required for issuance of an injunction against a petition preparer pursuant to § 110(j) is a question of first impression in this Circuit. For purposes of its analysis, the Court begins with the plain wording of the statute. Regulation of bankruptcy petition preparers is governed by § 110.[10] The issuance of an injunction to regulate or restrain a bankruptcy petition preparer's conduct is governed by § 110(j), which provides:

(1) **A debtor** for whom a bankruptcy petition preparer has prepared a document for filing, **the trustee, a creditor, or the United States trustee** in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides **may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.**

(2) (A) **In an action under paragraph (1), if the court finds that—**

(i) **a bankruptcy petition preparer has—**

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) **engaged in any other fraudulent, unfair, or deceptive conduct; and**

(ii) **injunctive relief is appropriate to prevent the recurrence of such conduct,**

**the court may enjoin the bankruptcy petition preparer from engaging in such conduct.**

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer. (Emphasis added).

The plain language of § 110(j) allows issuance of an injunction only in a civil action commenced by a debtor, a Chapter 7 trustee, a creditor or the United States Trustee. Section 110(j) does not define a "civil action."[11] Neither the legislative history nor any other provision of Title 11 offers clarification. However, Rule 9002(a), Fed. R. Bank. P., defines "civil action" as "an adversary proceeding or,

---

10. The Court is cognizant of the legislative history addressing bankruptcy petition preparers and their regulation, as well as the significant number of courts that have published decisions describing problems associated with petition preparers.

11. The Court notes that in other contexts Congress has used the phrase "civil action" to distinguish the customary civil litigation from an administrative process. *See, e.g.,* 42 U.S.C. § 405(g); *Sullivan v. Finkelstein,* 496 U.S. 617, 624, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990).

when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter." Furthermore, Rule 7001(7) identifies "a proceeding to obtain an injunction" as an adversary proceeding governed by Part VII of the Bankruptcy Rules.[12] The use of an adversary proceeding to request § 110(j) relief is reflected in numerous reported decisions. *See, e.g., In re Steward,* 312 B.R. 172 (Bankr.N.D.Ill.2004); *In re Barcelo,* 313 B.R. 135 (Bankr.E.D.N.Y. 2004); *In re Lucas,* 312 B.R. 559 (Bankr. D.Md.2004); *In re Nieves,* 290 B.R. 370, 380 (Bankr.C.D.Cal.2003); *In re Douglas,* 304 B.R. 223 (Bankr.D.Md.2003); *In re Bradshaw,* 233 B.R. 315 (Bankr.D.N.J. 1999); *In re Moore,* 232 B.R. 1 (Bankr. D.Me.1999); *In re Ellingson,* 230 B.R. 426 (Bankr.D.Mont.1999); *In re Webb,* 227 B.R. 494 (Bankr.S.D.Ohio 1998); *In re Hobbs,* 213 B.R. 207 (Bankr.D.Me.1997); *In re Paskel,* 201 B.R. 511 (Bankr. E.D.Ark.1996); *In re Schweitzer,* 196 B.R. 620 (Bankr.M.D.Fla.1996); *In re Stacy,* 193 B.R. 31 (Bankr.D.Or.1996).

■ Civil actions, generally, and adversary proceedings, specifically, have certain perquisites. They are commenced by the filing of a complaint, which must be personally served upon the defendant with a summons in order to create personal jurisdiction. Fed.R.Civ.P. 3 & 4; Fed. R. Bank. P. 7003 & 7004. The complaint must set forth a jurisdictional statement, a short and plain statement of the claim or claims, and a demand for judgment. Fed. R.Civ.P. 8; Fed. R. Bank. P. 7008. The defendant has an opportunity to file an answer or otherwise respond. Fed. R.Civ.P. 12; Fed. R. Bank. P. 7012. The litigants may engage in discovery. Fed. R.Civ.P. 16, 26–36; Fed. R. Bank. P. 7016,

7026–7036. Typically, the plaintiff bears the burden of proving its claims; the defendant has the burden of proving any affirmative defenses. At trial, the admission of evidence is subject to the Federal Rules of Evidence. Fed.R.Evid. 101; Fed. R. Bank. P. 9017. Any time in the process, should the litigants desire, they may compromise claims to their mutual satisfaction. The dispute is resolved by a neutral factfinder.

■ Section § 110(j)'s specific reference to a "civil action" is significant in contrast to the absence of similar language in § 110(i), which provides:

(i)(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, **or if a bankruptcy petition preparer** violates this section or **commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order** the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

---

12. Contested petitions and contested matters are also governed by many of the Rules in Part VII. *See* Fed. R. Bank. P. 1018 & 9014.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred. (Emphasis added).

The absence of reference to a "civil action" in § 110(i) appears purposeful. Section 110(i) results only in a factual recommendation subject to *de novo* review by the District Court. Imposition of sanctions occurs only after such review. Proceedings under § 110(i) can be initiated upon an order to show cause. If parties desire a different, more customary litigation process, it can be requested before the District Court.

■ In contrast, an injunction issued by a bankruptcy court under § 110(j) is a final order subject to appeal. It is more than a factual finding—it is a form of relief that can impair a bankruptcy petition preparer's property interest in operation of its business, thus implicating due process concerns. Outside of the bankruptcy context, issuance of an injunction requires initiation of a lawsuit; Congress' apparent intent to ensure the same process pursuant to § 110(j) is logical and sensible.

■ Only a handful of opinions suggest that an injunction may issue under § 110(j) outside the context of a civil action.[13] *See In re Graves*, 279 B.R. 266, 272–75 (9th Cir. BAP 2002); *In re Moore*, 290 B.R. 287, 292 (Bankr.E.D.N.C.2003); *In re Doser*, 292 B.R. 652, 658–59 (D.Idaho 2003) (following *Graves*); *In re Bankruptcy Petition Preparers Who are Not Certified Pursuant to Requirements of the Arizona Supreme Court*, 307 B.R. 134 (9th

Cir. BAP 2004) (following *Graves*); *In re Bush*, 275 B.R. 69, 84 n. 27 (Bankr.D.Idaho 2002) (presuming such authority without discussion). For the following reasons, the Court respectfully disagrees with the reasoning of these decisions and holds that a bankruptcy court may issue an injunction under § 110(j) *only* in the context of an adversary proceeding.

In *Graves*, the Ninth Circuit Bankruptcy Appellate Panel relied upon a bankruptcy court's inherent equitable power in § 105(a) to approve a bankruptcy judge's issuance of an injunction under § 110(j) based upon an order to show cause without initiation of an adversary proceeding. Noting that "the § 105(a) power cannot be inconsistent with provisions of the Bankruptcy Code," it concluded that a bankruptcy judge may invoke § 105(a) to implement § 10(j) because in its view, the "sole procedural deviation" is that the court—rather than a party with statutory standing—raises the issue.

■ The Tenth Circuit Court of Appeals does not interpret § 105(a) so broadly. Repeatedly, the Tenth Circuit has stated that bankruptcy judges may not rely on § 105 to act in a manner inconsistent with specific provisions of the Bankruptcy Code. *See In re Richards*, 994 F.2d 763 765 (10th Cir.1993); *In re Frieouf*, 938 F.2d 1099, 1103 n. 4 (10th Cir.1991); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir.1990), *opinion modified on other grounds*, *Abel v. West*, 932 F.2d 898 (10th Cir.1991). The language of § 110(j) is plain. It authorizes issuance of an injunction only in the context of a civil action.[14]

---

13. Due to the lack of precedent in this Circuit, the Bankruptcy Court may have relied upon this authority for the process it employed.

14. From a technical perspective, an order to show cause does not initiate a civil action

because it is initiated by the court rather than a party. *See* Fed. R. Bank. P. 7003; Fed. R.Civ.P. 3.

The bankruptcy court in *Moore* followed the reasoning in *Graves*. In addition, the court addressed the language of § 110(j), reasoning that the word "may" preceding "bring a civil action" suggests that a civil action is an optional mechanism to obtain injunctive relief, another appropriate mechanism would be by order to show cause This Court disagrees with *Moore's* reading of the language of § 10(j). The word "may" modifies "bring" rather than "civil action." Such language makes the commencement of the action, rather than its form, permissive

## B. Did the Bankruptcy Court employ the correct procedure?

■ In the case at bar, the Bankruptcy Court did not utilize the procedure required by § 110(j) It entered an Injunction in the main bankruptcy cases based on *sua sponte* Orders to Show Cause without initiation of an adversary proceeding. As a consequence, no debtor, trustee, creditor, or United States Trustee was a plaintiff. We the People Forms and Service Centers USA, Inc. perhaps others—were compelled to appear when they had not been personally served with a summons to effec-

tuate personal jurisdiction. There was no statement of the claims asserted or an opportunity for the Appellants to respond, nor was there an opportunity for discovery. Rather than having claims against them proved by a requisite standard of proof,[15] Appellants were required to disprove the bankruptcy judge's presumption of wrongful conduct derived from the reaffirmation hearings which Appellants did not attend. The Appellants had no opportunity to attempt a settlement and no opportunity to challenge evidence upon which the Bankruptcy Court relied.[16] Furthermore, the process used created an appearance that the bankruptcy judge was not a neutral factfinder.

Because the Bankruptcy Court clearly erred and abused its discretion in issuing the Injunction against Appellants by failing to comply with § 110(j), the Injunction is reversed and vacated, but the Court declines to remand the matter for further determination. As previously noted, Case No. 04–MK–30 (CBS) is pending before this Court involving the § 110(i) Recommendation. Such action requires review of the factual findings upon which the Injunc-

---

**15.** The Bankruptcy Court also did not address the sufficiency of the evidence with respect to the factors necessary for a permanent injunction. In deciding whether permanent injunctive relief is appropriate, a court should consider: (1) whether there is a cognizable danger that the violation will be repeated: (2) prior conduct; (3) current conduct; and (4) whether reliable promises have been made to commit no further violations in the future. *See Metzler v. IBP, Inc.*, 127 F.3d 959, 963–64 (10th Cir.1997). Although the Bankruptcy Court determined that "injunctive relief is appropriate to prevent the recurrence of this conduct," it did not expressly discuss the evidence with regard to any pertinent factors.

**16.** The pitfalls of proceeding outside of a customarily contoured civil action are apparent in the substance of the bankruptcy judge's ruling. For example, the Order states that

the bankruptcy judge relied upon the "file." The "file" is not further described, thus this Court assumes that this was the main bankruptcy case file for each set of debtors. The Appellants prepared the initial petitions and schedules but they were not parties to either bankruptcy case, did not attend the reaffirmation hearings, and cannot be presumed to have notice of the contents of the main case files. In addition, the Order refers to five opinions from other courts involving separate franchises of We the People Forms and Service Centers USA, Inc. in which violations of § 110 were found. Apparently, the Bankruptcy Court viewed these as evidencing past violations by the Appellants. However, as the decisions were not offered as evidence, the Appellants had no opportunity to address them or argue about their admissibility for that purpose.

tion was premised; review will be *de novo* in a civil action. In the interests of judicial economy and consistency of outcome, consideration of injunctive relief should occur in that matter. Therefore, if a party seeks injunctive relief under § 10(j), it may request it in Case No. 04–MK–30 (CBS).

**IT IS THEREFORE ORDERED** that:

(1) The Court **REVERSES** and **VACATES** the Bankruptcy Court's December 31, 2003 Injunction.

(2) The appeal (Case No. 04–MK–29 (CBS)) is **DISMISSED.** The Clerk of Court is directed to close Case No. 04–MK–29 (CBS)