FILED
United States Court of Appeals
Tenth Circuit

**January 22, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DOUGLAS BAILEY,

      Appellant,

v.

TOM CONNOLLY, Chapter 11
Trustee,

      Appellee,

---

RICKY DONOVAN VAN VLEET,
DBA First Financial Centre, Inc.,

      Debtor.

No. 09-1171
(D.C. No. 1:08-CV-00505-WYD)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

The issue in this appeal is whether a bankruptcy court order directing the

appellant, Douglas Bailey, to sign a prepared, sworn statement is a final,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appealable order for purposes of appellate review by the district court. We

conclude that it is not and, because the district court's order did not cure that

nonfinality, we dismiss this appeal for lack of jurisdiction.

**Background**

Ricky Donovan Van Vleet, d/b/a First Financial Centre, Inc. (Van Vleet),

filed a voluntary petition for relief under Chapter 11 of the bankruptcy code.

Among Van Vleet's assets were a number of business entities, including Kikula

Island Resorts Limited (KIR) and Encom Services Limited (Encom), located in

the Republic of Vanuatu, an island-nation in the South Pacific Ocean. Appellant

Bailey was Van Vleet's business associate and one of his creditors. He filed a

proof of claim against the bankruptcy estate for $4.06 million in wages owed for

his work for KIR.

The bankruptcy court vested broad authority in the Chapter 11 trustee, the

appellee here (Trustee), over the bankruptcy estate's Vanuatu assets, including the

power to elect, appoint, and remove the directors and managers of the business

entities, and to settle the appeal of a Vanuatu lawsuit that had resulted in a

multi-million-dollar judgment in favor of KIR and Bailey against the Vanuatu

government (the KIR lawsuit). After removing Van Vleet and Bailey as directors

and officers of all the estate's Vanuatu entities, the Trustee allegedly encountered

interference by them and filed a motion to hold them in contempt (Contempt

Motion). In the motion, the Trustee claimed, among other things, that at Van

Vleet's direction, Bailey had written letters to the Vanuatu Financial Services Commission repudiating the Trustee's removal of Van Vleet and Bailey as directors of the Vanuatu entities, and that Bailey had hired Vanuatu counsel to send a letter to the Vanuatu Attorney General disclaiming the Trustee's authority to settle the KIR lawsuit. The Trustee further asserted that Sean Griffin, an Encom employee whom the Trustee had discharged, claimed to be an Encom shareholder with authority to act on behalf of its directors, sent a letter to the Trustee's counsel demanding payment of Encom invoices, and had seized two KIR boats. The court set an evidentiary hearing on the Contempt Motion for February 20, 2008, and ordered Bailey, who was then in Vanuatu, to appear in person.[1] On February 5, the Trustee noticed a deposition of Bailey for February 13.

At a February 6 hearing on other matters, the Trustee testified under oath about his recent trip to Vanuatu. The Trustee stated that, contrary to the promises of Bailey's attorney, Bailey refused to sign documents relating to the Trustee's authority over the Vanuatu assets, which the Trustee intended to deliver to the Vanuatu government. The Trustee also stated that while attempting to confront Griffin about Encom, Griffin's girlfriend's father-in-law attacked him and an accountant with a club and sword. They escaped serious injury, and the man was

---

[1] In a later-filed response to the Contempt Motion, Bailey specifically demanded a hearing on the motion.

arrested when he tried to attack them again at the police station while the Trustee was reporting the crime. The Trustee also testified that Griffin was seen with Bailey the next day, that he later threatened the Trustee's Vanuatu attorney regarding Encom, and that he continued to seize Encom assets and tell other people that he was in charge of Encom.

After finding that Bailey had engaged in concerted efforts to thwart administration of the estate, the bankruptcy court again ordered Bailey to appear in person at the evidentiary hearing on the Contempt Motion set for February 20, and ordered him to attend a deposition beforehand. The court advised Bailey's counsel that there would be serious consequences if Bailey failed to comply. The Trustee then suggested to the court that it order Bailey to go to the Vanuatu authorities and swear under oath that Griffin had no authority over any KIR or Encom assets, that his possession of any such assets was improper, and that he should return any such assets. The Trustee planned to use Bailey's sworn statements to assist him in gaining control over the Vanuatu assets and to support a criminal affidavit against Griffin. Although Bailey was not at this hearing, his attorney stated that the request was "reasonable under the circumstances." Aplt. App., Vol. 2 at 294.

The court agreed with the Trustee and asked him to file an appropriate motion regarding a sworn statement, which he did on February 13. The motion included a proposed, written, sworn statement asserting, among other things, that

the Trustee held not less than a 90% interest in Encom and controlled its board of directors, that Griffin was no longer an Encom employee, and that Griffin had no right to possess any of the bankruptcy estate's Vanuatu assets, including those of Encom and KIR (the Sworn Statement). The court entered an order the next day granting the motion (the Sworn Statement Order). Bailey then acquired new counsel and moved to vacate the Sworn Statement Order, arguing that the requested relief should have been sought through an adversary proceeding, not by motion; that the order was entered without notice and an opportunity to respond; and that he disagreed with many of the factual statements and legal conclusions expressed in the Sworn Statement, some of which, he claimed, "might constitute compelled testimony in violation of [the] Fifth Amendment," *id.* at 318.

On February 20, while the motion to vacate was pending, the court held the evidentiary hearing on the Contempt Motion. Bailey did not appear in person at the hearing, as ordered, but he was represented by counsel. The court found that Bailey had not appeared for his deposition and held him in civil contempt, but offered to purge his contempt if he attended a deposition and another evidentiary hearing the court set for February 28. The court also ordered the Trustee to file a bill of particulars in further support of the Contempt Motion, which he did. In the bill of particulars, the Trustee described Bailey's failure to transfer stock held in his name as Van Vleet's nominee, as his previous attorney had agreed to in open court. The Trustee also asserted that, among other things, Van Vleet and/or

Bailey caused business, litigation, and banking records to be withheld from the Trustee; caused additional stock to be issued or allocated post-petition with the intent of diluting the estate's ownership and control of its Vanuatu entities; fostered spurious claims against estate assets; and conspired with Griffin to wrongfully seize Encom assets adverse to the estate. When Bailey again failed to appear for a deposition or for the February 28 hearing on the Contempt Motion, the court held him in civil contempt, levied a $1,000 daily sanction against him until he appeared for a deposition, and directed the Trustee to prepare a proposed order directing that Bailey be apprehended and presented to the court.

That same day, the bankruptcy court denied Bailey's motion to vacate the Sworn Statement Order. Bailey appealed both the Sworn Statement Order and the order denying his motion to vacate to the district court, which in April 2009 dismissed the appeal for lack of jurisdiction on the ground that the Sworn Statement Order was not a final, appealable order under any of the theories Bailey advanced. Bailey then filed this appeal.

In the meantime, proceedings on the Contempt Motion continued in the bankruptcy court with three additional evidentiary hearings in early March 2008. Bailey was represented by counsel at these hearings, but he did not personally attend. Thus, in May 2008, the court again held Bailey in civil contempt, continued the $1,000 daily sanction, and ordered Bailey to issue appropriate notarized letters to the Vanuatu government and all other interested parties

withdrawing and disclaiming all demands, threats, and complaints regarding the estate's Vanuatu assets, including letters previously sent to the Vanuatu authorities by Bailey, his Vanuatu counsel, and Griffin.

In July 2008, the Trustee informed the court in status reports and at a hearing that not only had Bailey failed to appear for a deposition or issue the notarized letters, but he had further interfered with administration of the estate's Vanuatu assets, including by filing a sworn letter with the Vanuatu Supreme Court in which he claimed to hold half of KIR's shares and disclaimed the Trustee's authority to settle the KIR lawsuit, and by filing an action against KIR to recover his $4.06 million claim against Van Vleet, in violation of the automatic stay. Accordingly, on July 25, the bankruptcy court held Bailey in civil contempt again, entered judgment against him in the sum of $147,000 based on the $1,000 daily sanction, increased the sanction to $2,500 for each day he did not issue the notarized letters, and awarded the Trustee attorney fees and costs related to the contempt proceedings and the preparation of the Sworn Statement motion. The court also issued a bench warrant for Bailey's arrest and later ordered the United States Marshal to seize his passport if he returned to the United States.

It does not appear that Bailey has ever complied with any of the court's orders or sanctions described above, was ever arrested pursuant to the bench warrant, or has had his passport seized. To date, the Trustee has not initiated contempt proceedings against Bailey for failing to sign the Sworn Statement, and

the bankruptcy court has not held Bailey in contempt based on Bailey's failure to

comply with the Sworn Statement Order.[2]

## Discussion

"We review the district court's dismissal for lack of jurisdiction under a

de novo standard." *Weston v. Mann (In re Weston)*, 18 F.3d 860, 862 (10th Cir.

1994). The order of our analysis is as follows: We must first determine whether

---

[2] We take judicial notice of the following events in this case. In August 2008, the bankruptcy court confirmed the Chapter 11 plan over Van Vleet's objection, and that matter was settled on appeal. The Trustee is currently executing the confirmed plan. In a recent post-confirmation quarterly report, he expected to apply for a final decree on June 30, 2010. *See* Bankr. Ct. Dkt. # 1550.

More recently, the district court has upheld on appeal the bankruptcy court's contempt orders, noting that Bailey's "flagrant disregard for the authority of the Court is astonishing." *Bailey v. Connolly (In re Van Vleet)*, Nos. 08-cv-00506-WYD, 08-cv-01645-WYD, 08-cv-01870-WYD, 08-cv-02109-WYD, 09-cv-00433-WYD, 2009 WL 3162212, at *6 (D. Colo. Sept. 30, 2009). In the same order, the district court upheld a ruling by the bankruptcy court that Bailey lacked standing to object to confirmation of the Chapter 11 plan proposed by the Trustee. The district court quoted the bankruptcy court's finding that Bailey

> "has had . . . over a year and a half to work with this Court in a cooperative and supportive fashion, and he has utterly refused to do so having fled to Vanuatu and being beyond reach of the Court in many respects. It would be so anomalous, so inconsistent to allow somebody for a long period of time to thumb its nose at the Court and yet recognize, respect, and embrace that person's participation in the Court as the Trustee tries to reorganize the debtor."

*Id.* at *11 (quoting Hr'g Tr. 44-45, July 31, 2008). Bailey's appeals from the district court's rulings are currently pending in this court.

-8-

the bankruptcy court's order is final and then consider the effect the district court's order has on the finality or nonfinality of the bankruptcy court's order. *See Strong v. W. United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 533 F.3d 1209, 1214-15 (10th Cir. 2008). If the bankruptcy court's order is not final, and the district court's order does not cure that nonfinality, we must dismiss this appeal for lack of jurisdiction. *See id.*

Bailey advances three reasons why the Sworn Statement Order is a final, appealable order, which we address in order of analytical convenience: as a final order under 28 U.S.C. § 158(a)(1); as an interlocutory order under the collateral-order construction of the final judgment rule announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); and because it is a mandatory injunction issued under 11 U.S.C. § 105(a).[3]

**1. Finality under 28 U.S.C. § 158(a)(1)**

Under 28 U.S.C. § 158(a)(1), "district courts . . . have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" entered by bankruptcy judges. To determine finality, "we separately consider the finality of each discrete dispute raised within the larger bankruptcy case." *Crossingham Trust v.*

---

[3] Although Bailey's notice of appeal to the district court, like his notice of appeal to this court, identified the Sworn Statement Order and the order denying his motion to vacate it as the orders appealed, his briefs at both appellate levels lack any analysis of the order denying the motion to vacate. Thus we conclude that he has forfeited any right to appeal from that order in these proceedings. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007).

*Baines (In re Baines)*, 528 F.3d 806, 810 (10th Cir. 2008). Thus, "the appropriate 'judicial unit'" for finality purposes is not the overall bankruptcy case but "the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the [bankruptcy] petition." *Adelman v. Fourth Nat'l Bank & Trust Co., N.A. of Tulsa, Okla. (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990).[4]

Bailey argues that the Sworn Statement Order is an appealable "judicial unit" because the bankruptcy court contemplated no further proceedings regarding it—the order "finally and completely resolved the discrete dispute before the Bankruptcy Court," namely, "the Trustee's Motion to compel Bailey to sign the [Sworn] Statement. Bailey was ordered to sign the [Sworn] Statement and no issue remained regarding the Trustee's Motion and no further proceedings were (or have been) scheduled or held with regard to this discrete dispute." Aplt. Opening Br. at 16-17. The Trustee responds that the Sworn Statement Order is not final because it was "merely a step in the overall process" of addressing Bailey's conduct and its effect on the administration of the bankruptcy estate. Aplee. Response Br. at 29.

---

[4] The test for finality in both *Crossingham Trust* and *Adelman* was used to determine circuit court jurisdiction under 28 U.S.C. § 158(d)(1). However, as finality under § 158(d)(1) depends in part on finality of the bankruptcy court's order under § 158(a)(1), *see In re Tri-Valley Distrib., Inc.*, 533 F.3d at 1214-15, we apply the same test to the § 158(a)(1) question.

We agree with the Trustee. The Trustee sought the sworn statement to support a criminal complaint against Sean Griffin and to curtail Griffin's interference with administration of the bankruptcy estate's Vanuatu assets. The averments in the Sworn Statement that Bailey was ordered to sign and deliver to Vanuatu authorities go to the heart of the bankruptcy case—ownership, control, and distribution of the estate's Vanuatu assets. In other words, the sworn statement was a step in the process of administering the estate, and it was nonfinal because the Trustee's efforts in that respect remained ongoing at the time Bailey appealed. Furthermore, those efforts continue at this time, *see supra*, n.2, so we cannot say that the matter has ripened into appealability. Moreover, the bankruptcy court has not held Bailey in contempt or imposed sanctions for his refusal to sign the Sworn Statement Order, nor has Bailey moved the bankruptcy court to stay enforcement of the order, each of which further supports our view that the Sworn Statement Order is not an immediately appealable "judicial unit" under § 158(a)(1), as there may yet be additional rulings related to it.

## 2. The *Cohen* collateral-order doctrine.

"The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in [28 U.S.C.] § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511

U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546).[5] The category of cases that fall within the collateral-order doctrine "comprises only those . . . decisions that are [1] conclusive, [2] that resolve important questions completely separate from the merits, and [3] that would render such important question effectively unreviewable on appeal from final judgment in the underlying action." *Id.* The Supreme Court has repeatedly stressed that appeal under *Cohen* "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'" *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009) (quoting *Digital Equip. Corp.*, 511 U.S. at 868); *see also Will v. Hallock*, 546 U.S. 345, 350 (2006) (noting the Court's continuing emphasis on the doctrine's "modest scope").

To this end, the "second [*Cohen*] condition insists upon *important questions separate from the merits*," and, "[m]ore significantly, the third *Cohen* question, whether a right is adequately vindicable or effectively reviewable, simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of the final judgment rule." *Mohawk Indus., Inc.*, 130 S. Ct. at 605 (quotations omitted). A ruling that "may

---

[5] As evident from the foregoing analysis of appealable "judicial units," the finality rule in bankruptcy cases is less stringent than the rule in civil appeals under 28 U.S.C. § 1291. However, we conclude that this leniency has no effect on a *Cohen* analysis, and that the finality concerns that inform *Cohen* jurisprudence arising in cases appealable under § 1291 are equally applicable in the bankruptcy context.

burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." *Digital Equip., Inc.*, 511 U.S. at 872. "Instead, the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus., Inc.*, 130 S. Ct. at 605 (quoting *Will*, 546 U.S. at 352-53).

> The Supreme Court's approach to this consideration is categorical:

> In making this determination, we do not engage in an individualized inquiry. Rather, *our focus is on the entire category to which a claim belongs*. As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291.

*Id.* (emphasis added) (citations, quotations, and alteration omitted). Thus, "[t]he crucial question . . . is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Id.* at 606. And "'important' in *Cohen*'s sense" means "weightier than the societal interests advanced by the ordinary operation of final judgment principles." *Digital Equip., Inc.*, 511 U.S. at 879. Where such interests are grounded in statute or our Constitution, "irretrievable loss can hardly be trivial, and the collateral order doctrine might therefore be understood as reflecting the familiar principle of statutory construction that, when possible, courts should construe

-13-

statutes (here § 1291) to foster harmony with other statutory and constitutional law." *Id.* (quotation and alterations omitted).

Applying these general principles, we conclude that the Sworn Statement Order does not meet any of the conditions of the *Cohen* test. The first condition, conclusive determination of an issue, is not satisfied for the same reasons the order does not constitute a "judicial unit."

As to the interrelated second and third conditions of *Cohen*, we have already concluded that the Sworn Statement Order was intended to assist in the Trustee's exercise of authority over the bankruptcy estate's Vanuatu assets. Thus, the issue was not completely separate from the merits of the bankruptcy case—that is, who owned which of the Vanuatu assets and how each would be treated in the bankruptcy proceeding, questions that are central to the administration of the estate. And delaying review of the order until the conclusion of the bankruptcy case will not result in ineffective review. Bailey's arguments on the merits are relevant to this inquiry. His main theme is that the Sworn Statement Order should be reversed because (a) it violates his Fifth Amendment right against self-incrimination by describing the criminal conduct of Griffin, whom Bailey allegedly controlled or conspired with; and (b) it violates Bailey's due process rights because the bankruptcy court entered the order without giving him a chance to respond to the Trustee's motion and because the Trustee should have proceeded by an adversary proceeding rather than by motion.

Regarding the first of these points, Bailey's constitutional interest in not incriminating himself, we will assume for the sake of discussion that the Sworn Statement contains self-incriminating statements. Even so, delaying review does not "imperil[] the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders," *Mohawk Indus., Inc.*, 130 S. Ct. at 606, that class being orders resulting in potentially self-incriminating statements. In criminal proceedings, "[t]he correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal." *Cobbledick v. United States*, 309 U.S. 323, 325-26 (1940). This is so because "[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Id.* at 325; *see also Digital Equip. Corp.*, 511 U.S. at 876 (quoting *Cobbledick*, 309 U.S. at 325).[6] Thus, a criminal defendant must await conviction before appealing on the ground that a confession violates the right against self-incrimination. *See* 18 U.S.C. § 3731 (providing only the United States with a right to appeal a decision or order suppressing or excluding evidence); *cf. Jackson v. Denno*, 378 U.S. 368, 395 (1964) (stating that "[i]t is both practical and desirable that . . . a proper determination of

_____

[6] We recognize that an adverse ruling on a double jeopardy defense is, under *Cohen*, an exception to the general rule that constitutional claims in criminal cases must await conviction before they are appealable. *See Abney v. United States*, 431 U.S. 651, 659 (1977).

-15-

voluntariness be made *prior to the admission of the confession to the jury*"

(emphasis added)).  This aspect of criminal appellate procedure leads us to the

conclusion that the constitutional interest in being free of self-incriminating

statements is not "important" enough in the *Cohen* sense to justify an

interlocutory appeal of the Sworn Statement order.[7]  For similar reasons, the

second part of Bailey's main theme on the merits, that the bankruptcy court

violated his Fifth Amendment due process rights by entering the order without

giving him a chance to respond to the Trustee's motion and by failing to require

the Trustee to proceed by an adversary proceeding rather than by motion, fails to

meet the level of importance required under *Cohen*.  Deferring review of these

contentions until final judgment does not imperil any interests that "justify the

cost of allowing immediate appeal of the entire class of relevant orders."  *Digital

Equip., Inc.*, 511 U.S. at 879.

Bailey also argues that an appeal under *Cohen* is warranted because the

Sworn Statement Order will evade review if he is never held in contempt of it,

and that noncompliance with the order could be used to impeach him in later

proceedings in the bankruptcy court.  These arguments miss the mark because

they do not place the Sworn Statement Order into any category of cases deserving

---

[7]     Moreover, the vagueness of Bailey's assertions regarding Griffin's criminal conduct and his link to it, and the speculative nature of the possibility that the Sworn Statement would be used in a criminal proceeding against Bailey, add little support for a different conclusion.

of review under *Cohen*. *See Mohawk Indus., Inc.*, 130 S. Ct. at 605 (stating that the "focus is on the entire category to which a claim belongs" (quotation omitted)). Rather, they merely attempt to identify some interest that would be "irretrievably lost." But "almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." *Digital Equip. Corp.*, 511 U.S. at 872. And "if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement." *Id.* "[T]he jurisdiction of the courts of appeals should not, and cannot, depend on a party's agility in so characterizing the right asserted." *Id.*

### 3. Finality under 11 U.S.C. § 105(a)

Bailey's remaining contention is that the Sworn Statement Order was final because it was issued under 11 U.S.C. § 105(a), which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[8] Bailey categorizes the Sworn Statement Order as a mandatory injunction akin to a permanent injunction, which he claims is a final, appealable order in the bankruptcy context. In support, Bailey first relies on *Celotex Corp. v. Edwards*, where the Supreme Court

---

[8]     Although the Sworn Statement Order does not explicitly reference § 105(a), there appears to be no debate that the bankruptcy court relied on its authority under § 105(a) in issuing that order.

-17-

concluded that the proper avenue for obtaining appellate review of a § 105(a) injunction was through the district court in which the bankruptcy judges serves, under 28 U.S.C. § 158(a), and then to the appropriate circuit court under 28 U.S.C. § 158(d), rather than by collateral attack in a different circuit. *See* 514 U.S. 300, 303, 313 (1995). Notably absent from the Court's decision is any reference to *when* a § 105(a) injunction becomes appealable. And our examination of the other cases Bailey relies on makes clear that appealability occurs in circumstances not present here: (1) when necessary to effect congressional intent that disputes over stay orders be quickly settled, *see Eddleman v. U. S. Dep't of Labor*, 923 F.2d 782, 784-85 (10th Cir. 1991), *overruled in part by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992); or (2) when the injunction can be considered final, *see Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1092 (9th Cir. 2007); *Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.)*, 932 F.2d 147, 150-51 (2d Cir. 1991); *Fulton v. McVay*, 318 B.R. 546, 548 (D. Colo. 2004); *Shugrue v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc.)*, 139 B.R. 772, 778 (S.D.N.Y. 1992).[9]

---

[9] We note that § 105(a) injunctions may be appealable under 28 U.S.C. § 158(a)(3), which gives district courts jurisdiction to hear appeals from interlocutory bankruptcy court decisions "with leave of the court." Bailey has not argued before this court that the district court should have exercised its discretion and permitted appeal under § 158(a)(3), so we do not consider whether the district court should have done so.

As these cases make clear, aside from the interest in giving expeditious appellate consideration to stay orders issued in bankruptcy cases, the dispositive consideration is whether an injunction issued under § 105(a) can be considered final. Section 105(a) injunctions are not immediately appealable simply because they command a particular action and are issued under § 105(a). Accordingly, since the Sworn Statement Order is not a stay order or, as discussed above, a final order, it is not immediately appealable.[10]

We further reject Bailey's argument that the Sworn Statement Order affected his substantive rights, and thereby became an appealable injunction, by virtue of the court's award of fees and costs to the Trustee for preparing the motion requesting the order. The fee award was not tied to Bailey's refusal to comply with the Sworn Statement Order and has no jurisdictional bearing on the

---

[10] The district court relied on *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995), in support of its conclusion that the Sworn Statement Order was not an appealable injunction because it did not grant substantive relief on any claim. In *Caplan*, the Third Circuit distinguished nonappealable injunctive orders as those that do not grant or deny the ultimate relief sought in a complaint. *Id.* at 834. Bailey claims that under *Caplan,* the Sworn Statement Order qualifies as an appealable injunction because it granted the ultimate relief the Trustee sought. But *Caplan*, in relevant part, concerned whether an injunction issued in a non-bankruptcy case was appealable under 28 U.S.C. § 1292(a)(1), which provides that circuit courts have jurisdiction over appeals from interlocutory orders issued by district courts that grant, continue, modify, refuse, or dissolve injunctions. Notably, § 1292(a)(1) does not encompass appeals as of right from such interlocutory orders when issued by bankruptcy judges, and there is no parallel provision in 28 U.S.C. § 158. We therefore consider *Caplan* inapposite to our analysis of the finality of injunctions issued under § 105(a).

finality of that order. Finally, we need not resolve Bailey's complaint that the district court erred in comparing the Sworn Statement Order to an unappealable discovery order. Even assuming the analogy was incorrect, it does not alter our conclusion that the district court lacked jurisdiction under the theories Bailey has advanced in this court.

## Conclusion

Having concluded that the Sworn Statement Order was not a final, appealable order, we must dismiss this appeal for lack of jurisdiction, as the district court's order dismissing Bailey's appeal did nothing to cure the nonfinality of the Sworn Statement Order. *See In re Tri-Valley Distrib., Inc.*, 533 F.3d at 1214-15. We therefore do not reach Bailey's argument on the merits, that the Sworn Statement Order should be reversed.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-20-